## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | :  No. 21-cr-0216-JMY |
| vs. | : |
| | : |
| WARREN McALILEY | : |

## MEMORANDUM

**Younge, J.**                                                                                                    January 8, 2026

Petitioner Warren McAliley filed his *pro se* Motion to Vacate, Set Aside and/or Correct the Sentence under 28 U.S.C. § 2255 (hereinafter "Motion to Vacate") on June 16, 2025. (Motion to Vacate, ECF No. 97.) On July 21, 2025, Petitioner filed a *pro se* Memorandum of Law Pursuant to 28 U.S.C. § 2255 (hereinafter "Petitioner's Memorandum") in support of his Motion to Vacate. (Petitioner's Memorandum, ECF No. 103.) The Court finds this matter appropriate for resolution without oral argument or an evidentiary hearing. L.R. 7.1(f); 28 U.S.C. § 2255(b). For the reasons stated in the following Memorandum entered by the Court, Petitioner's Motion to Vacate is denied.

I.  **FACTUAL AND PROCEDURAL BACKGROUND:**

On May 26, 2021, the Grand Jury returned an indictment charging Petitioner with: possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(e) (Count 1); possession with intent to distribute 400 grams or more of fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) (Count 2); carrying and using a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Count 3). On August 3, after a superseding indictment, the Grand Jury charged Defendant with two additional counts: importation and use of mail to transport drug paraphernalia, in violation of 21 U.S.C. § 863(a)(2), (a)(3), and aiding and abetting in violation of 18 U.S.C. § 2 (Count 4); and attempt to

manufacture controlled substances, in violation of 21 U.S.C. § 846 (Count 5). On September 29, 2021, after a second superseding indictment, the Grand Jury charged defendant with an additional count: importation of merchandise contrary to law in violation of 18 U.S.C. § 545 (Count 6). (Second Superseding Indictment, ECF No. 28.)

Prior to entering a guilty plea, Petitioner filed and litigated a Motion to Suppress Evidence in which he argued, among other things, that officers lacked probable cause to search his vehicle because they unlawfully extended the traffic stop which led to his arrest. (ECF No. 27.) United States District Judge Eduardo C. Robreno held an evidentiary hearing on Petitioner's Motion to Suppress Evidence in which Judge Robreno heard testimony from ten government witnesses: Customs and Border Protection ("CBP") Officer Michael Hughes, forensic chemist Shelby Stotelmyer, CBP Officer Paul Smith, CBP Officer Michael Cardo, Department of Homeland Security Investigations ("HSI") Special Agent Michael Johnson, HSI Special Agent Joseph Consavage, and Pennsylvania State Troopers James Nolan, Michael Vaccaro, Javier Garcia, and Cody Simcox. After the evidentiary hearing, Judge Robreno entered an Order and Memorandum in which he made findings of fact and reach conclusions of law before denying Petitioner's Motion to Suppress Evidence. *United States v. McAliley*, 2022 U.S Dist. LEXIS 44258 (E.D. Pa. March 14, 2022) affirmed *United States v. McAliley*, 2024 U.S. App. LEXIS 25982 (3d October 15, 2024).

Based on evidence presented at the evidentiary hearing, Judge Robreno made factual findings which are relevant to Petitioner's pending Motion to Vacate as follows:

> On September 15, 2020, officers with the CBP at Memphis International Airport intercepted a package being transported by FedEx that originated from Shaanxi Province, China. The shipper was "Xi'an Ze Bang, Biotech, Co., Ltd." and the package was destined for the following address: "Justin Sellers, 1319 West Jerome Street, Philadelphia, PA." CBP officers are tasked with determining whether any merchandise shipments are out of the ordinary. For example, CBP officers will

look for products labeled as "silicon dioxide." Silicon dioxide is a sand-type product that one could obtain from the United States, so, according to CBP Officer Hughes, it is a red flag if an international package is labelled with "silicon dioxide." Additionally, according to CBP Officer Smith, "silicon dioxide" is a commonly used as a false label.

The CBP Officers deemed the package suspicious as it was passing through the Memphis International Airport FedEx Hub because: (1) The shipper had prior shipments seized by CBP for customs violations, (2) the package was labeled as "silicon dioxide," and (3) the "silicon dioxide" was being sent to a residential address, rather than a company.

CBP Officer Smith searched the package and found a white powder. CBP officers sent the package to satellite laboratory for chemical testing, where forensic chemist Stotelmyer determined it to be over a kilogram of Xylazine. Xylazine is a potent horse tranquilizer, legally used by veterinarians as an animal sedative. Though Xylazine is not a controlled substance, according to CBP Officer Hughes, forensic chemist Stotelmyer, CBP Officer Smith, and CBP Officer Cardo, it is frequently used as a drug adulterant/cutting agent and mixed with narcotics. Suppression hearing Transcript (hereinafter "Tr") 238:5-12, ECF No. 41; *see also* Tr. 19:14-16 (CBP Officer Hughes testified that Xylazine was a cutting agent); Tr. 31:21-25; 32:1-3 (forensic chemist Stotelmyer notes Xylazine is a cutting agent); Tr. 46:14-16 (Officer Smith noted its protocol to seize an adulterant like Xylazine); Tr. 57:10-11 (noting Xylazine is considered a drug adulterant). The Food and Drug Administrative (the "FDA") has approved Xylazine for veterinarian use only. *See* 21 C.F.R. § 522.2662(c). Forensic chemist Stotelmyer confirmed that Xylazine is only approved for veterinarian use.

The CBP officers reported the package to the Department of Homeland Security Investigations. HSI agents, believing that the intended recipient sought to mix the Xylazine with narcotics, enlisted the help of the Pennsylvania State Police ("PSP") to enact a "controlled delivery" of the package. HSI agents coordinated with the PSP Eastern Interdiction Unit, a drug task force assigned responsibility for interdicting narcotics and drug paraphernalia imported into the state. Tr. at 132:24-133:10.

The HSI agents and PSP officers ruled out the possibility that the Xylazine was heading to a facility that specializes in animal medicine or animal-related products. The HSI agents and PSP officers determined that 1319 West Jerome Street is a private residence in Northeast Philadelphia. The HSI agents and PSP officers determined that "Justin Sellers" is a fake name and that individuals with the last name "McAliley" live at the 1319 West Jerome Street residence. Officer Vaccaro testified that drug dealers often use fictitious names and false labels in order to ship, receive, and transport drugs and drug paraphernalia. Tr. 197:11-21. According to the Government, based on the fictitious name, packaging, and destination of the

3

Xylazine, investigators determined that the substance was likely intended for illegal drug trade. See Tr. 137:23-25; 138:1-16.

On September 25, 2020, HSI agents and PSP officers swapped the Xylazine for a replica substance and effectuated a "controlled delivery" of the package. An undercover postal inspector delivered the package to the front door of 1319 West Jerome Street. A few minutes later, a man believed to be the father of the [Petitioner] brought the package into the home. Undercover officers observed the residence by parking in front of the house and around the block. Officer Vaccaro parked a few doors down in close to the residence. Approximately 30 minutes later, at 12:10 p.m., [Petitioner] drove to the 1319 West Jerome Street address in a Chevrolet Malibu and retrieved the package.

Undercover officers, including Officer Nolan, Officer Vaccaro, and Special Agent Consavage, then followed [Petitioner] to a residence located at 1349 Kerbaugh Street, Philadelphia, Pennsylvania. Officers surveilled the area. Some time later, in the afternoon, [Petitioner] left the 1349 Kerbaugh Street address and drove to a hair salon to pick up his girlfriend, Sharita Boykin. Undercover officers observed [Petitioner] driving at a high rate of speed and making several abrupt turns, which the officers deemed to be "countersurveillance" tactics.

After [Petitioner] picked up Ms. Boykin, the undercover officers observed [Petitioner] re-enter the 1349 Kerbaugh Street residence. The officers continued to observe the address noting that the neighborhood was a high crime area based on background research as well as observations of individuals in the area under the influence of narcotics.

At approximately 4:00 p.m., officers observed Ms. Boykin leave the 1349 Kerbaugh Street residence and enter the driver's seat of the Chevrolet Malibu. [Petitioner] then left the 1349 Kerbaugh Street residence and entered the passenger seat of the vehicle. However, after several minutes, [Petitioner] exited the vehicle and re-entered the 1349 Kerbaugh Street residence. Ms. Boykin, alone in the car, then slowly drove around the block. Officer Vaccaro testified that Ms. Boykin appeared to slow down and peer into his vehicle. Officer Vaccaaro believed that his position had been detected and requested another officer assume his position.

Ms. Boykin continued to drive the Chevrolet Malibu and eventually parked nearby at a local store. Undercover officers then noticed that [Petitioner] had left the 1349 Kerbaugh Street residence through the back door with a black duffel bag in hand. [Petitioner] then walked through an overgrown back alley and rejoined Ms. Boykin at her vehicle. [Petitioner] re-entered the Chevrolet Malibu and Ms. Boykin drove away from the store. The officers testified that these appeared to be "countersurveillance" measures.

The undercover officers suspected [Petitioner] was transporting controlled substances, or its instrumentalities, in the duffel bag. Following instructions from

4

> HSI and PSP, Cody Simcox, a PSP officer, created a "walled off stop" in an attempt to develop independent probable cause to search the Chevrolet Malibu. Officer Simcox pulled the vehicle over after observing Ms. Boykin fail to use a turn signal and fail to completely stop at a stop sign.

*United States v. McAliley*, 2022 U.S. Dist. LEXIS 44258, *3-8 (E.D. Pa. March 14, 2022).

Law enforcement officers then spoke with Petitioner and Ms. Boykin while they waited for a canine unit to arrive. *Id.* at 10-11.

> After arriving, the canine unit identified controlled substances in the vehicle. The officers searched the vehicle and the black duffle bag recovering: (1) two kilograms of fentanyl, (2) $61,380.00, (3) a Glock 27 with several magazines, (4) various packaging material, and (5) cellular phones. The officers then arrested [Petitioner] and Ms. Boykin. PSP officers then obtained a search warrant for the 1349 Kerbaugh Street address and recovered drug paraphernalia including stamped baggies."

*Id*.

Following the denial of his Motion to Suppress Evidence, Petitioner entered into a Guilty Plea Agreement with the Government under the terms of which he preserved his right to appeal Judge Robreno's suppression ruling. (Guilty Plea Agreement ¶ 14.a.v., ECF No. 70.) The Parties entered a plea agreement, in which Petitioner agreed that, with the exception of the suppression issue, or a challenge to a sentence above the statutory maximum or an upward departure or variance from the guideline range, he would not present an appeal or petition for collateral review. (*Id.* ¶ 14.) The agreement also preserved Petitioner's right to present a claim of ineffective assistance of counsel. (*Id.*)

Petitioner pled guilty to all six counts in the Second Superseding Indictment: possession of a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1) (Count One); possession with intent to distribute 400 grams or more of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) (Count Two); possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c) (Count Three); importation of drug paraphernalia, in violation of 21 U.S.C. §§

863(a)(2)-(3) and 2 (Count Four); attempted manufacture of a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 846 (Count Five); and importation of merchandise contrary to law, in violation of 18 U.S.C. §§ 545 and 2 (Count Six).  (Transcript of Change of Plea Hearing, ECF No. 105.)

On January 17, 2023, Judge Robreno sentenced the Petitioner.  (Sentencing Transcript, ECF No. 94.)   At that time, the Government extended additional leniency – the Government withdrew a notice it had filed for an enhanced sentence under 21 U.S.C. § 851, and it chose not to seek a mandatory minimum sentence under the Armed Career Criminal Act.  (*Id.* page 4-7.) Therefore, although Petitioner faced an advisory guideline range of 292 to 365 months as a career offender who accepted responsibility, increased to 352 to 425 months based on the 924(c) count, the Government recommended a sentence within the range of 17 to 20 years (204 to 240 months).  (*Id.* page 17.)  Judge Robreno agreed, and imposed a below-range sentence of 240 months' imprisonment, along with other penalties.  (*Id.* page 28.)  Specifically, Judge Robreno imposed prison terms of 180 months on Counts Two, Five, and Six, 120 months on Count One, and 36 months on Count Four, all to run concurrently, and a consecutive 60-month term on the 924(c) charge in Count Three.  (*Id.*)

Petitioner filed an appeal, raising the suppression issue, and the Third Circuit Court of Appeals affirmed the judgment.  *United States v. McAliley*, U.S. App. LEXIS 25982 (3d Cir. Oct. 15, 2024).  The present Motion to Vacate followed.

**II.    LEGAL STANDARD:**

28 U.S.C. § 2255(a) permits a prisoner serving a federal sentence to move the sentencing court to "vacate, set aside, or correct the sentence" where: (1) "the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "the court was without jurisdiction

to impose such sentence;" (3) "the sentence was in excess of the maximum authorized by law;" or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). To obtain relief pursuant to Section 2255(a), "a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Cleary*, 46 F.3d 307, 310 (3d Cir. 1995) (quotation omitted). This heightened standard reflects "the great interest in finality of judgments," which "has special force with respect to convictions based on guilty pleas." *Id.* (same).

28 U.S.C. § 2255(b) requires a district court to hold a hearing to resolve the issues and make factual findings and legal conclusions on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b). In determining whether a hearing is warranted, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989). The district court need not investigate a movant's claims based on "vague and conclusory allegations." *See United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000). However, if the movant alleges any non-frivolous facts that, accepted as true, would warrant relief under Section 2255(a), then the court must hold an evidentiary hearing to resolve the motion. *See United States v. McCoy*, 410 F.3d 124, 134 (3d Cir. 2005).

### III. DISCUSSION:

In his Motion to Vacate, Petitioner challenges only two of the charges in the Second Superseding Indictment to which he entered a plea of guilty – importation of drug paraphernalia

(Count Four), and the importation of merchandise contrary to law (Count Six).[1]  Therefore, the Court will apply the concurrent sentence doctrine and dismiss the Petitioner's Motion to Vacate.

The concurrent sentence doctrine provides that "a federal court may decline to review an alleged error where concurrent sentences were imposed on separate counts, where the alleged error is associated with only one count, and where the remaining sentences are unassailable." *Nosov v. Warden Schuylkill FCI*, 634 F. App'x. 379, 380 (3d Cir. 2016) (citing *United States v. McKie*, 112 F.3d 626, 628 (3d Cir. 1997)); *see also Logan v. Dist. Att'y Allegheny Cty.*, 752 F. App'x 119, 122 (3d Cir. 2018).  The Third Circuit Court of Appeals has reasoned that because the petitioner "remains sentenced in any event, reviewing the concurrently sentenced counts is of no utility.  The practice is eminently practical and conserves judicial resources for more pressing needs." *Jones v. Zimmerman*, 805 F.2d 1125, 1128 (3d Cir. 1986).  "This doctrine should be applied only where it is apparent that a defendant will not suffer collateral consequences from the unreviewed conviction." *United States v. Robinson*, 2021 U.S. Dist. LEXIS 211716, at *5 (E.D. Pa. 2021) (citing *United States v. Clemons*, 843 F.2d 741, 743 n. 2 (3d Cir. 1988)).

In the habeas context, "the collateral consequences of a conviction for . . . a concurrent sentence . . . must rise to the level of 'custody' to be redressable." *Logan*, 752 F. App'x at 122 (citing *Gardner v. Warden Lewisburg USP*, 845 F.3d 99, 104 (3d Cir. 2017); *United States v. Ross*, 801 F.3d 374, 383 (3d Cir. 2015).  The Third Circuit explained that the "term 'custody' in federal habeas statutes is 'designed to preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty.'" *Id.* at 122 n.5 (quoting *Hensley v. Municipal Court*, 411 U.S. 345, 351 (1973)).  As a result, "the collateral consequences that attach to the conviction at issue

---

[1] Both charges related to Petitioner's enter of a guilty plea for importing Xylazine.

must pose a severe and immediate restraint on the petitioner that is not shared by the public generally." *Id.*

In his Motion to Vacate, Petitioner asserts that the Government presented no evidence to support the charges of importation of drug paraphernalia, in violation of 21 U.S.C. §§ 863(a)(2)-(3), and importation of merchandise contrary to law, in violation of 18 U.S.C. § 545. Petitioner presents his challenge to the weight and sufficiency of the evidence as separate issues under three separate topic headings in his Motion to Vacate and in Petitioner's Memorandum. Petitioner first asserts that his attorney was ineffective for failing to challenge the indictment with respect to Counts Four and Six. He then argues that his Motion to Vacate presents a claim of "actual innocence" to the importation charges. Finally, Petitioner alleges prosecutorial misconduct before the grand jury regarding these counts.

Counts in the Second Superseding Indictment related to accusations that Petitioner imported Xylazine are the only charges that he now challenges. However, these charges had no impact on the sentence that Petitioner ultimately received with the exception of adding special assessments totaling $200. This $200 special assessment is insufficient to warrant habeas corpus relief under Section 2255. *Gardner*, 845 F.3d 99 (3d Cir. 2017) (citing *United States v. Ross*, 801 F.3d at 381) (A special assessment or other financial penalty does not support relief under Section 2255.).

The Court imposed a 36-month sentence on the drug paraphernalia charge in Count Four (which was the statutory maximum for that offense), and 180 months on the smuggling charge in Count Six. Those terms were imposed to run concurrently to sentences on other counts of equal or greater length. Likewise, the importation charges had no effect at all on his guideline calculation. While Petitioner pled guilty to and was convicted of six drug trafficking,

9

importation, and firearms offenses, all except the Section 924(c) offense – which is treated separately under U.S.S.G. § 3D1.1(b)(1) – are grouped together under Federal Sentencing Guideline calculations. U.S.S.G. §§ 3D1.1, 3D1.2. Therefore, the fact that Petitioner pled guilty to and was convicted of additional drug paraphernalia and merchandise charges had no impact on his sentencing guideline range calculation.

## IV.    CONCLUSION:

For the above reasons, Petitioner's Motion to Vacate, Set Aside and/or Correct the Sentence under 28 U.S.C. § 2255 is denied. An appropriate Order shall follow.

**BY THE COURT**:

   /s/ John Milton Younge   
Judge John Milton Younge